[No. E023152. Fourth Dist., Div. Two. Nov. 23, 1999.]

In re RANDY S., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
RANDY S., Defendant and Appellant.

COUNSEL

Michon M. Hinz, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Carl H. Horst and Arlene Aquintey Sevidal, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**HOLLENHORST, Acting P. J.**—In *In re Jerry M.* (1997) 59 Cal.App.4th 289 [69 Cal.Rptr.2d 148], the court decided there was insufficient evidence that the defendant possessed the specific intent to arouse his own sexual desires because he was 11 years old. In this case, we hold that the fact the defendant is 11 years old is only one factor to consider in determining whether he is capable of possessing the specific intent to arouse his own sexual desires.

Randy S., a minor, (herein Defendant) appeals from a final judgment following the juvenile court's adjudication that he committed a lewd act

upon a child in violation of Penal Code section 288, subdivision (a),[1] and subsequent adjudication of Defendant as a ward of the court. (Welf. & Inst. Code, § 602.) Defendant contends there was insufficient evidence of the key element of intent to arouse sexual desires. We disagree and affirm the juvenile court's judgment.

## FACTS

On April 3, 1998, at 7:30 a.m., Defendant's stepmother (herein Mother) heard Defendant and his stepsister, Ryan, in the shower. Defendant was 11 years old and Ryan was 2 at the time. Mother tried to open the bathroom door but it was locked. After she told Defendant to open the door, he did so and Ryan came out of the bathroom. She was not crying or wet, but was naked.[2]

Ten minutes after Mother discovered Ryan and Defendant in the bathroom, Mother saw Ryan reemerge from the bathroom, this time crying and wet.[3] Mother wrapped a towel around her, and thought Ryan was crying because she was wet. Five minutes after Defendant left for school at 8:30 a.m., Mother noticed an area (the "size of an orange") around Ryan's vagina was red, raw, swollen and had a rash. When Mother asked Ryan what had happened, Ryan tearfully told Mother, "[Defendant] hurt my pee-pee," and pointed to her vaginal area.

Mother then went to Defendant's school and spoke with Defendant. In response to Mother's inquiry as to why he thought she was there, Defendant said, "I hope you don't think that I sexually abused Ryan." Mother said, "[I]t's funny that you should say . . . that, because something has been . . . inside of her, and she's red and she's swollen and we have to go to the hospital." Mother added that the examination would show "traces" of Defendant if he had his body or fingers inside Ryan. Defendant responded that he did not want to go to the hospital because "there would be traces of him on her." He said he put his fingers in her to wash her with soap and to get the soap out. On the way home, Defendant denied he had touched Ryan, but after he got home, Mother pushed him against the wall, demanding the truth, and Defendant said he had put his fingers inside Ryan, and he did not know why.

Prior to the day of the incident, Mother had told Defendant not to take showers with Ryan, not to be naked in her presence, and not to touch her

[1]All further statutory references are to the Penal Code, unless otherwise stated.

[2]With the exception of wearing pull-ups at night, Ryan was normally naked because, according to Mother, she was undergoing potty training. On the day of the incident she had been naked since she got up around 4:00 a.m.

[3]It is unclear from the record as to how long Defendant and Ryan were in the bathroom together after they reentered the bathroom and whether the bathroom door had been locked.

private parts. On numerous previous occasions, Defendant asked Mother if he could take a shower with Ryan, and each time, Mother had denied Defendant's request.

During questioning of Defendant by a sheriff's deputy on the day of the incident, Defendant said he had been in the shower when Ryan came into the bathroom, and Ryan began slapping herself in the vaginal area. Defendant added that Ryan had picked up carpet fibers and put them in her vagina.[4] Defendant denied having touched Ryan in the vaginal area and explained to the officer that he told Mother he had touched Ryan because that was what she wanted to hear. He also told the deputy that when he asked Mother if she showed up at his school because he had sexually harassed Ryan, he made the statement because he thought his stepbrother had told Mother that he (Defendant) had sexually harassed Ryan.

When Mother took Ryan to the hospital, three days after the incident, she was diagnosed as having a bladder infection. When Mother later took Ryan to the child assessment center, she refused to let anyone examine her and would not answer any questions.

## Standard of Review

In determining whether there is sufficient evidence to find a defendant guilty of violating section 288, subdivision (a), "[w]e review the whole record most favorably to the judgment to determine whether there is substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could have made the requisite finding under the governing standard of proof. [Citations.] The trier of fact, not the appellate court, must be convinced of the defendant's guilt, and if the circumstances and reasonable inferences justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant reversal of the judgment. [Citation.]" (*In re Jerry M., supra,* 59 Cal.App.4th 289, 298.)

## Sufficiency of the Evidence

Defendant challenges the finding that he violated section 288, subdivision (a), on the ground that the evidence was insufficient to show that he intended to arouse his own sexual desires. He bases his contention on the

[4]The deputy did not notice any loose pieces of carpet. Mother also did not notice any loose pieces of carpet in or around Ryan's vaginal area. She had never seen Ryan pull pieces of carpet fiber from the carpet, nor had she ever seen Ryan slap her vaginal area before.

fact he was only 11 years old at the time, he was prepubescent,[5] and there was a lack of evidence of sexual arousal.

Section 288, subdivision (a), in relevant part, provides: "Any person who willfully and lewdly commits any lewd or lascivious act . . . upon or with the body, or any part or member thereof, of a child who is under the age of 14 years, *with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person* or the child, is guilty of a felony . . . ." (Italics added.) "[S]ection 288 is violated by 'any touching' of an underage child accomplished with the intent of arousing the sexual desires of either the perpetrator or the child." (*People* v. *Martinez* (1995) 11 Cal.4th 434, 452 [45 Cal.Rptr.2d 905, 903 P.2d 1037].)

In *Martinez,* our high court explained that the basic purpose of section 288 is "to provide children with 'special protection' from sexual exploitation. [Citation.] . . . The statute also assumes that young victims suffer profound harm whenever they are perceived and used as objects of sexual desire. [Citation.] . . . [¶] For this reason, the courts have long indicated that section 288 prohibits *all* forms of *sexually motivated contact* with an underage child. Indeed, the 'gist' of the offense has always been the defendant's *intent to sexually exploit a child, not the nature of the offending act.* [Citation.] '[T]he purpose of the perpetrator in touching the child is the controlling factor and each case is to be examined in the light of the intent with which the act was done. . . .' " (*People* v. *Martinez, supra,* 11 Cal.4th 434, 443-444, italics added.)

The *Martinez* court noted that "convictions have been obtained and upheld only where the defendant's lustful intent was manifest under the particular circumstances. In all cases arising under the statute, the People are required to prove that the defendant touched the child in order to obtain *immediate sexual gratification.* . . . [¶] We reiterate that the circumstances of the touching remain highly relevant to a section 288 violation. The trier of fact must find a union of act and sexual intent [citation], and such intent must be inferred from all the circumstances beyond a reasonable doubt." (*People* v. *Martinez, supra,* 11 Cal.4th 434, 452, italics added; *People* v. *Levesque* (1995) 35 Cal.App.4th 530, 541 [41 Cal.Rptr.2d 439].)

Circumstances relevant to determining whether the touching was sexually motivated include the nature of the charged act, physical evidence

[5]Webster's Third New International Dictionary (1993) page 1836, defines "pubescent" as "arriving at or having reached puberty." At page 1835, it defines "puberty" as "the condition of being or the period of becoming first capable of reproducing sexually marked by maturing of the genital organs, development of secondary sex characteristics, and in the human and in higher primates by the first occurrence of menstruation in the female; . . . the age at which puberty occurs [is] often construed legally as 14 in boys and 12 in girls." (See also *People* v. *Olsen* (1984) 36 Cal.3d 638, 645-646 [205 Cal.Rptr. 492, 685 P.2d 52].)

of sexual arousal, clandestine meetings, "the *defendant's extrajudicial statements* [citation], other acts of lewd conduct admitted or charged in the case [citations], the relationship of the parties [citation], and any coercion, bribery, or *deceit used* to obtain the victim's cooperation or *to avoid detection* [citation]." (*People* v. *Martinez, supra,* 11 Cal.4th 434, 445, italics added.)

The court in *In re Jerry M., supra,* 59 Cal.App.4th 289 added "the age of the defendant" to this list of factors. (*Id.,* at p. 299.) "[T]he younger the minor the less likely his acts are with the specific intent of sexual arousal. At some age younger than 14 years, which we need not determine in this case, the minor cannot as a matter of law have the specific intent of sexual arousal." (*Id.,* at p. 300.) While it is reasonable to assume that if a young child is incapable of experiencing sexual arousal, the child would not intend to arouse his own sexual desires, it is likewise reasonable to assume that when a young child begins to experiment in sexual arousal, the child *can* harbor an intent to arouse his own sexual desires.

Defendant relies on *In re Jerry M., supra,* 59 Cal.App.4th 289 in arguing there was insufficient evidence of intent of sexual arousal. In that case, the perpetrator, an 11-year-old boy, on several occasions touched two 12-year-old and one 13-year-old girls' breasts and coerced a 12-year-old to show him her breasts. The juvenile court found that the perpetrator committed four counts of violating section 288, subdivision (a). On appeal, the appellate court reversed the lower court ruling on the ground there was insufficient evidence that the perpetrator committed the acts with specific intent of arousing his sexual desires.

In reaching this conclusion, the court relied on the following factors: "Jerry was 11 years old and there is no evidence he had reached puberty. There is no evidence of sexual arousal. (Cf. *In re Paul C.* [(1990)] 221 Cal.App.3d [43,] 54 [270 Cal.Rptr. 369] [defendant 13½ years old had an erection at time of offense].)" (*In re Jerry M., supra,* 59 Cal.App.4th 289, 300.) The court further noted that the minor victims knew Jerry; Jerry made no attempt to avoid detection; the touchings were momentary; and there was no caressing. The *Jerry M.* court concluded that, "The record shows Jerry was a brazen 11-year-old whose conduct was more consistent with an intent to annoy and obtain attention than with sexual arousal. Under these circumstances Jerry was perhaps guilty of battery [citation], but the record does not support a true finding beyond a reasonable doubt of conduct intended sexually to exploit a child—the 'gist' of section 288, subdivision (a). [Citation.]" (*In re Jerry M., supra,* at p. 300.)

Here, unlike the facts in *Jerry M.*, several factors are present which may be relied upon in concluding there was sufficient evidence of intent to

sexually arouse. First, when Mother initially confronted Defendant she did not tell him why she was upset and had come to his school to see him. Instead, he volunteered "I hope you don't think that I sexually abused Ryan." Mother responded, "[I]t's funny that you should say . . . that, because something has been . . . inside of her, and she's red and she's swollen and we have to go to the hospital." Upon further inquiry, Defendant admitted that he had put his fingers inside Ryan.

Second, on several prior occasions, Defendant had requested permission to shower with Ryan. His latest request was made earlier in the week. Mother refused his requests, telling him he was not to take showers with Ryan, not to be naked in her presence, and not to touch her private parts. Obviously, Defendant had an unnatural interest in showering with Ryan.

Third, the incident was done in a clandestine manner. Defendant and Ryan were alone in the bathroom with the door closed. Clearly, Defendant was trying to keep the nature of his activities hidden from his Mother, who had specifically told him he was not to shower with Ryan. More importantly, within minutes after Mother had taken Ryan out of the bathroom, Defendant had her back inside and proceeded to place his fingers inside her vagina.

And fourth, Defendant changed his story of what had happened many times in an attempt to avoid being caught. First, he admitted touching Ryan. Then he denied touching her. Then he returned to his original story. And finally, he concocted a story that Ryan had slapped herself until she was red and stuffed carpet fibers into her vagina.

Nonetheless, Defendant emphasizes the similarity of the facts in his case to the facts in *Jerry M.*, specifically, the fact that both he and the defendant in *Jerry M.* were 11 years old and there was no evidence that either one had reached puberty or was sexually aroused at the time of the incident.[6] Using his young age as the primary evidence that he had not reached puberty, Defendant suggests that his age should trump the other factors which must be considered in determining whether the touching was sexually motivated. We reject his suggestion. Defendant knew he could be in trouble for sexually abusing Ryan. He had gone into the bathroom with Ryan on at least one occasion and locking the door, he placed his fingers in her vagina, and then he attempted to evade the consequences of his actions. Therefore, we are convinced that the circumstances surrounding Defendant's actions demonstrate that he harbored the requisite intent to arouse his own sexual desires through the use of Ryan. Although he may only have been experimenting sexually, his actions clearly evidenced an intent to sexually stimulate himself. We are mindful of the words of our high court, "[T]he circumstances of

[6]From our reading of the facts in *Jerry M.*, the only similarity between that case and this is the fact that both defendants were 11 years old at the time of the incidents.

the touching remain highly relevant to a section 288 violation. The trier of fact must find a union of act and sexual intent [citation], and such intent *must be inferred from all the circumstances* beyond a reasonable doubt." (*People* v. *Martinez*, *supra*, 11 Cal.4th 434, 452, italics added.)

Furthermore, although the evidence also showed that Defendant was a troubled youth who had attention deficit disorder and had previously exhibited hostility toward Ryan, we are not convinced that this evidence demonstrates that Defendant's inappropriate touching of Ryan was nothing more than a continuation of his hostility towards her.

Accordingly, we conclude there was sufficient evidence that Defendant possessed the requisite specific intent required under section 288, subdivision (a).

### DISPOSITION

The judgment is affirmed.

Richli, J., concurred.

**GAUT, J.**—I dissent. Here there was insufficient evidence supporting the trial court's finding that beyond a reasonable doubt Randy intended sexually to exploit Ryan in violation of Penal Code section 288, subdivision (a).

"Violation of section 288, subdivision (a) requires the specific intent of arousing the sexual desires of either the perpetrator or the victim. . . . Because the requisite specific intent is an element of the crime it must be proved beyond a reasonable doubt." (*In re Jerry M.* (1997) 59 Cal.App.4th 289, 299 [69 Cal.Rptr.2d 148].) "[T]he younger the minor the less likely his acts are with the specific intent of sexual arousal." (*Id.,* at p. 300.)

The majority opinion relies on the following evidence to support its conclusion that the trial court did not err in finding beyond a reasonable doubt that Randy violated Penal Code section 288:

(1) Randy said to his mom, "I hope you don't think that I sexually abused Ryan."

(2) Randy requested to take showers with Ryan, and was told not to do so and not to touch Ryan's private parts.

(3) Randy committed the offense in a clandestine manner.

(4) Randy changed his story and lied about the incident.

This evidence shows that Randy knew that what he did was wrong and that it was of a sexual nature. The evidence does not establish that he touched Ryan's vagina "with the intent of arousing, appealing to, or gratifying" his own "lust, passions, or sexual desires."

On the other hand, there was substantial evidence that Randy was a disturbed, angry, violent child who wanted attention and was hostile toward his stepsister, Ryan. Randy had previously tried to choke her. Four days before the incident, Mother had called Randy's father and asked him to take Randy because he had been acting out and had said he wanted to leave. During the week before Mother called, Randy had been rebelling and causing a lot of problems. He also had been getting in trouble at school. The school had called Mother several times because he had been pushing students and causing other problems. Mother told Randy he would have to live with his father if he did not behave. Randy said he wanted to leave but wanted to live with his biological mother, not his father. Three days before the incident, Randy's paternal grandmother was going to pick him up, but she did not show up.

There is no evidence that Randy had committed any sexual misconduct prior to the subject incident. Under Penal Code section 288, subdivision (a) it is not enough that a child perpetrator has committed a sexually suggestive act. Penal Code section 288, subdivision (a) expressly states that commission of the act must be sexually motivated as well. Where there is no evidence that a prepubescent child has been sexually aroused or is capable of sexual arousal, evidence that an inappropriate, sexually suggestive act has been committed is not sufficient to satisfy the requirement that the child perpetrator committed the act with intent to arouse his or her own sexual desires.

As to the incident occurring clandestinely, the record does not indicate whether the bathroom door was shut or locked when Randy committed the offense. The record indicates that the first time Mother discovered Ryan and Randy in the bathroom the door was locked, but there is no evidence as to whether, when Randy committed the offense approximately 10 minutes later, Randy shut the bathroom door and locked it. The evidence does raise the inference that Randy committed the act in blatant defiance of his mother's order not to take a shower with Ryan. It could be inferred that Randy knew Mother would discover he had defied her order, particularly after she had just discovered he had taken a shower with Ryan. These circumstances indicate an act of defiance and an absence of clandestine activity or, at most, very weak evidence of clandestine activity, with no evidence of sexual motivation or gratification.

The majority opinion states that Randy's age should not "trump" other factors. While age should not be the sole determinative factor, it is a very

significant factor here since Randy was 11 years old, whereas the age of puberty for boys is 14, and there is no evidence that Randy was capable of, or motivated by, sexual gratification or lust. As noted in the majority opinion, "the basic purpose of section 288 is 'to provide children with "special protection" from sexual exploitation.' " (Maj. opn., *ante*, at p. 405, quoting *People* v. *Martinez* (1995) 11 Cal.4th 434, 443-444 [45 Cal.Rptr.2d 905, 903 P.2d 1037].) Here, the record does not provide any evidence that Randy was sexually exploiting Ryan. Rather, the record shows that Randy was a disturbed, hostile "11-year-old whose conduct was more consistent with an intent to annoy and obtain attention than with sexual arousal." (*In re Jerry M., supra,* 59 Cal.App.4th at p. 300.) As the court found in *Jerry M.*, under such circumstances, Randy "was perhaps guilty of battery ([Pen. Code,] § 242), but the record does not support a true finding beyond a reasonable doubt of conduct intended sexually to exploit a child—the 'gist' of section 288, subdivision (a)." (*Ibid.*

Appellant's petition for review by the Supreme Court was denied February 23, 2000. Kennard, J., was of the opinion that the petition should be granted.