614 N.E.2d 1367 (1993)
245 Ill. App.3d 669
185 Ill.Dec. 682
In re E.R.E., a Minor (The People of the State of Illinois, Respondent-Appellee,
v.
E.R.E., Petitioner-Appellant).
No. 2-92-0146.
Appellate Court of Illinois, Second District.
June 11, 1993.
Michael J. Salvi, Salvi, Salvi & Wifler, Lake Zurich, for E.E., a minor.
Michael J. Waller, Lake County State's Atty., William L. Browers, Deputy Director, State's Atty. Appellate Prosecutor, Stephen E. Norris, Deputy Director, State's Attys. Appellate Prosecutor, Mt. Vernon, Kendra S. Mitchell, State's Attys. Appellate Prosecutor, for People.
Presiding Justice INGLIS delivered the opinion of the court:
E.R.E. (the minor) was adjudged delinquent by the circuit court of Lake County for having committed the offense of aggravated criminal sexual abuse (Ill.Rev.Stat. 1991, ch. 38, par. 12-16(c)(2)(i) (now 720 ILCS 5/12-16(c)(2)(i) (West 1992))). He appeals, bringing 10 allegations of error, nine of which we will not recite because the adjudication must be reversed due to a failure to prove that the minor's conduct was done for his sexual gratification.
The minor is the uncle of the victim; the minor's older brother is the victim's father. The minor was born on December 29, 1979, and the offense was alleged to have occurred between July 1990 and September 1991, when the minor was 11 and 12 years old. The victim was approximately six *1368 years old when the offense allegedly occurred. The minor was originally charged with three counts of aggravated criminal sexual abuse and one count of aggravated criminal sexual assault. Three of the four counts concerned the victim, while one abuse count concerned the victim's younger sister. The trial court dismissed three of the four counts after the close of the State's case. The count for which the minor was adjudicated responsible alleged that the minor knowingly touched the victim's vagina for the minor's sexual gratification.
The victim testified that she was seven years old at the time of trial and she answered various questions establishing that she knew the difference between the truth and lies. She stated that the minor was her uncle and, when asked what the minor did to her, said that he told her "scary monsters." At this point in the proceedings, the trial judge stated that the victim had asked to tell her story to the judge in the judge's office. The judge arranged for the victim to give her testimony in chambers, with counsel for both sides present but with the minor excluded.
Once in chambers, the victim testified that the minor had touched her on her "private" once, over her underwear. She pointed to the vaginal area on a doll when asked where her "private" was. She stated that her pants were on when the touching occurred.
On cross-examination, the victim stated that the touching had occurred in the basement living room of her grandparents' house. She denied that her mother had instructed her to falsely accuse the minor of touching her and testified that she told her mother of the minor's actions on the same day they occurred. The victim also related that the minor had told her not to tell anyone when he touched her.
The victim's mother also testified. She stated that in August 1990, the victim's sister approached her and said that the minor was touching the victim's "pee-pee." The sister also told her mother that the minor had made the victim put her mouth on his "pee-pee" and that he put his "pee-pee" "by" the victim's "pee-pee." The mother then stated that she called the victim in the house, who denied the incident and said that the minor was doing those things to her sister. The sister then denied any touching. The victim subsequently stated that some touching had occurred between her and the minor. The mother then took the children across the street to tell their story to their grandparents, the minor's parents. The mother did not call the police or the Department of Children and Family Services at that time because she was afraid of what her husband would do to her if she did. The mother later told a DCFS worker about the allegations while the worker was at the mother's home for a visit. The mother stated that the victim and her sister told her that the touching had occurred in the minor's bedroom. After the incident complained of, the mother allowed her daughters to continue to go to their grandparents' house, which was also where the minor lived. The mother testified that she had to let the children go to their grandparents' home or she would be "in trouble" with her husband.
The defense presented the testimony of the minor's brother, who was also the victim's father. He stated that he and the victim's mother had been in the midst of a divorce since August 1990 and that he was seeking custody of his children. He also testified that, since August 1990, the victim had never complained to him that the minor had touched her private parts.
The minor's mother testified next. She stated that the victim's mother had brought the victim and her siblings over to her house to be baby-sat many times after the alleged incident occurred. She also stated that she had never seen the minor touch the victim's or her sister's genital areas. She testified that the victim's mother had come to her house one day and told her that the minor had been abusing the victim and her sister. The minor's mother then called the minor into the room and asked him why he would do such a thing to "his own blood." At this point the victim's mother either laughed or grinned "like it was a joke" and left with her daughters.
*1369 Finally, the minor testified. He stated that he knew what male and female private parts were. He denied ever touching the victim or her sister and stated that he had never taken their pants off. On cross-examination, the minor stated that he had never played with the victim or her sister without an adult present in the immediate area. The minor further testified that he had previously threatened the victim and her sister with physical harm when they used his Nintendo games and got them dirty.
After closing arguments, the court found the minor responsible for the remaining count of aggravated criminal sexual abuse. The minor was adjudicated a delinquent minor, made a ward of the court, and placed on probation for 12 months with various conditions. He filed a timely appeal.
The minor argues that the adjudication of delinquency must be reversed because the State did not prove an essential element of its case, that the minor touched the victim for his sexual gratification. The minor cites no authority for his claim, but the State's Attorney, to her credit, provides us with a case on point and favorable to the minor. The State argues that the minor's failure to cite authority should result in waiver of the issue. In the alternative, the State claims that we should not follow In re A.J.H. (1991), 210 Ill.App.3d 65, 154 Ill. Dec. 743, 568 N.E.2d 964, the case that supports the minor's position.
Generally, a point raised in an appellate brief but not accompanied by any citation to authority is waived. (134 Ill.2d R. 341(e)(7); People v. Carpenter (1992), 228 Ill.App.3d 899, 904-05, 170 Ill.Dec. 928, 593 N.E.2d 817.) However, we may consider an error which has not been properly preserved for review when the evidence is closely balanced, as it is in this case. People v. Torres (1977), 47 Ill.App.3d 101, 106, 5 Ill.Dec. 480, 361 N.E.2d 803.
In order to have been found responsible for committing aggravated criminal sexual abuse, the State had to prove beyond a reasonable doubt (see In re Urbasek (1967), 38 Ill.2d 535, 232 N.E.2d 716) that the minor committed an act of sexual conduct with a victim under the age of nine at the time of the offense. (Ill.Rev.Stat. 1991, ch. 38, par. 12-16(c)(2)(i) (now 720 ILCS 5/12-16(c)(2)(i) (West 1992)).) "Sexual conduct" is defined as "any intentional or knowing touching or fondling by * * * the accused, either directly or through clothing, of the sex organs, anus or breast of the victim * * *, or any part of the body of a child under 13 years of age, for the purpose of sexual gratification or arousal of the victim or the accused." (Ill.Rev. Stat.1991, ch. 38, par. 12-12(e) (now 720 ILCS 5/12-12(e) (West 1992)).) The petition for adjudication of wardship filed against the minor alleged that he touched the victim's vagina "for the purpose of the sexual gratification of the minor."
As the State acknowledges, support for the minor's position exists in a recent case from this court, In re A.J.H. (1991), 210 Ill.App.3d 65, 154 Ill.Dec. 743, 568 N.E.2d 964. We find that case dispositive.
In In re A.J.H., a 13-year-old girl was accused of aggravated criminal sexual abuse for touching the penis of a five-year-old boy for whom she baby-sat. The victim had testified that the minor had touched his penis, skin-to-skin, for four to five seconds and then told him not to tell anyone. (A.J.H., 210 Ill.App.3d at 67-68, 154 Ill.Dec. 743, 568 N.E.2d 964.) The State argued in A.J.H., as it does here, that the above evidence was sufficient to infer the requisite sexual intent. We rejected that claim, noting that "it is not justified to impute the same intent into a child's action that one could reasonably impute into the actions of an adult." A.J.H., 210 Ill.App.3d at 72, 154 Ill.Dec. 743, 568 N.E.2d 964.
Here, the evidence is even weaker than that presented in A.J.H., in that there is no testimony regarding the length of the alleged touching. Further, the minor here was two years younger than the baby-sitter in A.J.H. when the offense allegedly occurred. Given also that the touching allegedly occurred over the victim's underwear and while the victim's pants were on, it does not necessarily follow beyond a reasonable *1370 doubt that the claimed contact here was done to sexually gratify the minor.
We continue to follow our decision in In re A.J.H., which requires reversal in this case for failure to prove the sexual intent element of aggravated criminal sexual abuse.
Reversed.
DOYLE and COLWELL, JJ., concur.